cv5-542.dd.tcb 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-95-00542-CV







Texas Commerce Bank, National Association/Jack Harpster, Independent


Executor of the Estate of William R. Harpster, Appellants



v.



Jack Harpster, Independent Executor of the Estate of William R. Harpster,


Deceased/Texas Commerce Bank, National Association, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. 91-5946, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING






PER CURIAM



 Jack Harpster, Independent Executor of the Estate of General William R. Harpster,
recovered damages plus attorney's fees from Texas Commerce Bank for the Bank's handling of 
money deposited by or meant for Gen. Harpster. On appeal, both Jack Harpster and the Bank
complain about the judgment. The Bank complains that the court should not have awarded
attorney's fees for a purely noncontractual recovery. Jack Harpster complains that the court erred
by using jury instructions that unfairly limited the basis of his recovery and by granting a partial
summary judgment that the Bank had no duty to investigate a questionable power of attorney. We
will affirm the trial-court judgment in part, reverse the trial-court judgment in part, and render
judgment in part.



BACKGROUND


 This case arises from the misdepositing of funds intended for Gen. Harpster's bank
account and the withdrawal of funds from Gen. Harpster's bank account and certificate of deposit
after he suffered a stroke on February 28, 1989. In April 1989, one of Gen. Harpster's sons,
David Harpster, forged two checks on Gen. Harpster's checking account; the Bank rejected these. 
David also that month deposited into his own account at the Bank a $19,658.05 check payable to
Gen. Harpster. This check did not bear any endorsement; the only instruction was that it was for
deposit only to David's account. On July 12, 1989, David wrote himself a $5,000 check on Gen.
Harpster's account using a rubber-stamp signature of Gen. Harpster's name (the rubber-stamp
signature did not match Gen. Harpster's signature on the signature card on file at the Bank); this
was the first of many such checks. David also partially redeemed the CD on August 15, 1989 with
verbal instructions to the Bank.

 After the partial redemption of the CD, a Bank officer discovered a general power
of attorney dated June 29, 1989 on file with the Bank; the officer testified that he may have
discovered the power of attorney as late as October 15, 1989. The power-of-attorney document
plainly states that Gen. Harpster gave David 



the power to deposit or withdraw for any purpose in or from any bank or other
financial institution, any funds checks or other credits which [Gen. Harpster] now
or hereafter may have on deposit or be entitled to, and to endorse, cash and receive
the proceeds of any and all checks vouchers or other orders for money, to open or
close accounts and to receive statements, vouchers, notices or other documents
from any bank or other financial institution concerning any and all accounts or
banking transactions in [Gen. Harpster's] name or in which [Gen. Harpster] may
have an interest.



In Gen. Harpster's signature space on the power-of-attorney form was an "X". No Bank
employee knew when or how the document was filed at the Bank. The Bank did not investigate
the power of attorney, but in October 1989 asked David to complete the Bank's specific power-of-attorney form with a signature card. He did not comply until February 16, 1990, during which
time the Bank paid out $40,000 from Gen. Harpster's checking account. When David returned
the form, the Bank rejected it because, when called by a Bank officer, the notary whose stamp was
used admitted he had not notarized the document. David returned a second form notarized by the
same notary (who, when called, said he had actually witnessed the execution of this form).

 Gen. Harpster sued the Bank for negligence and breach of contract; when Gen.
Harpster died, his son Jack substituted as plaintiff as the independent executor of Gen. Harpster's
estate. 

 The parties stipulate to the amount of money involved. Jack concedes that, of the
funds David extracted from their father's deposits, David spent $17,660.89 for Gen. Harpster's
benefit. Jack insists that Gen. Harpster did not benefit from or authorize the removal of the
remaining $140,947.16.

 The trial court granted a partial summary judgment that the Bank had no duty to
investigate the power of attorney. The jury found that the Bank was negligent and failed to
comply with any of its agreements with Gen. Harpster. The jury found damages of $19,658.05
for both the negligence and the breach of agreements; this is the exact amount of the check
payable to Gen. Harpster that the Bank deposited into David's account without proper
endorsements. The court rendered judgment favoring Jack for $19,658.05 in damages plus
$65,000 in attorney's fees.



THE ESTATE'S COMPLAINTS


 We begin by addressing the crosspoints of error Jack brings on behalf of his
father's estate. He contends first that the trial court erroneously granted partial summary
judgment that the Bank did not have a duty to investigate the competency of Gen. Harpster before
accepting the general power of attorney. The order is silent as to the basis of the lack of duty. 
The transcript on appeal lacks the motion for partial summary judgment, the answer, or any
response to either. In summary judgment practice, "[i]ssues not expressly presented to the trial
court by written motion, answer, or other response shall not be considered on appeal as grounds
for reversal." Tex. R. Civ. P. 166a(c). Since we do not have the motion, answer, or any
response to either, we cannot know what was expressly presented to the trial court, we cannot
know on what basis the court decided, and cannot reverse. We overrule crosspoint one.

 By crosspoints two and three, Jack complains of prefatory language to questions
to the jury that implicitly assumed that the power of attorney was valid. Texas Rule of Civil
Procedure 278 governs the submission of jury questions. Trial courts must submit properly
phrased questions and instructions on issues raised by the pleadings and evidence. A judgment
shall not be reversed because of the failure to submit other and various phases or different shades
of the same question. Tex. R. Civ. P. 278. Failure to submit a question or instruction is not a
ground for reversal unless the party relying on the question and complaining of the judgment has
requested its submission and tendered it in substantially correct wording; a party not relying on
the question must merely object to the failure to ask. Tex. R. Civ. P. 278.

 Jack contends by crosspoint two that the court erred by prefacing three questions
with language barring the jury from considering any losses after June 29, 1989, the date of the
power of attorney; this limitation was invoked only by the jury finding that Gen. Harpster signed
the power of attorney. This limiting instruction was supported by evidence that Gen. Harpster
competently executed the power of attorney and by the presumption that an adult is competent
until proven and found otherwise. See Walker v. Eason, 643 S.W.2d 390, 391 (Tex. 1982)
(regarding the presumption); Arnold v. Arnold, 657 S.W.2d 506, 507 (Tex. App.--Corpus Christi
1983, no writ)(regarding the presumption); see also Tex. Health & Safety Code Ann. §
576.002(b) (West 1992)(regarding the presumption). The limitation is justified because, if the
power of attorney was valid, David had the authority to conduct all the disputed transactions
completed after June 29, 1989; his withdrawals after June 29, 1989 would be authorized and not
the source of compensable damages to Gen. Harpster's estate regardless of whether the Bank
followed its own procedures in accepting the power of attorney, ensuring the validity of signatures
on checks, or releasing the CD funds. The conflicting evidence and inferences regarding his
competence do not render erroneous the court's asking a question conditionally limited to the time
before the power of attorney.

 Concordantly, the court did not err by refusing Jack's requested damage questions
which were not restricted to a particular timeframe. The evidence of the validity of the power of
attorney rendered the asking of unconditionally unrestricted questions incorrect. The court might
also have asked a question limited to the period after the power of attorney was signed,
anticipating a finding that the power of attorney was invalid. (1) No such request or objection to the
failure to ask such questions appears in the record. The absence of a finding that the power of
attorney was invalid erases any hint of error in the failure to ask Jack's questions. We overrule
crosspoint two.

 By crosspoint three, Jack complains that the court should not have prefaced
Question No. 2, regarding whether David's access to Gen. Harpster's accounts was authorized,
with the phrase "[n]ot considering the power of attorney dated June 29, 1989." He argues that
the court's exclusion of the effect of the power of attorney from Question No. 2 removed from
the jury the right to find that the power of attorney was defective, that Gen. Harpster was not
competent to give his authority, or that Gen. Harpster did not give his authority when he placed
his "X" upon the document. Jack's complaint in crosspoint three is more about what was not
asked than about what was.

 The preface was justified. Evidence that Gen. Harpster did not competently grant
the power of attorney but that he competently and orally approved some transactions supported
asking a question that distinguished between right of access granted by the power of attorney and
right of access obtained otherwise. If Gen. Harpster approved some transactions in ways other
than the power of attorney, then those transactions could not be the source of damages to his estate
even if the power of attorney was invalid. We note that the jury's answer--that David had no
authorized access to Gen. Harpster's accounts independent of the power of attorney--favored Jack. 
That the trial court might also have asked whether the power of attorney was valid or granted to
David the right of access to the accounts does not show reversible error here; Jack does not raise
a crosspoint of error about the court not asking such additional questions. We overrule crosspoint
three.



THE BANK'S COMPLAINTS


 The Bank complains by its sole point of error that the court erred by awarding
attorney's fees because there was no substantiated contract recovery on which such an award could
be based. The Bank contends that no evidence supports the breach-of-contract finding and that
no other basis supports an award of attorney's fees.

 Jack rightly does not dispute that his tort claim alone can support the award, so we
focus on whether any evidence supports a breach-of-contract finding. (2) We review a no-evidence
point by considering only the evidence and inferences supporting the finding and disregarding all
contrary evidence and inferences. Weirich v. Weirich, 833 S.W.2d 942, 945 (Tex. 1992). If any
evidence of probative force supports the finding, we must affirm the finding. In re King's Estate,
244 S.W.2d 660, 661 (Tex. 1951). Our review is complicated somewhat because the breach-of-contract question, unlike the breach-of-contract damage question, was not limited to the period
before June 29, 1989, the date on the power of attorney.

 Jack does not argue on appeal that the jury's finding that contract damages accrued
before the power of attorney necessarily means that any evidence supports the breach-of-contract
finding or the attorney's fee award. The $19,658.05 amount found as contract damages clearly
relates solely to the check to Gen. Harpster that the Bank deposited into David's account in April. 
To support the breach-of-contract finding and damage award, this misdeposit would have to
constitute a breach of contract. The agreements Jack contends were breached, however, relate
only to funds on deposit; because the misdeposited check never was deposited into Gen.
Harpster's accounts, the misdeposit, though perhaps negligent, did not breach an agreement. (On
appeal, the Bank does not contest the negligence finding or the negligence damages in the same
amount.) The evidence to which Jack refers in his reply brief regarding the misdeposit concerns
whether the act of misdepositing violated reasonable banking practices--a negligence standard. 
Jack does not detail and we do not find any evidence regarding a breach of contract preceding the
power of attorney's date of June 29, 1989. With no evidence of a breach of contract, the jury's
finding of breach-of-contract damages preceding June 29, 1989 is likewise supported by no
evidence. The tort damages thus do not arise from any breach of contract.

 Because there is no breach-of-contract damage question or finding for the period
after June 29, 1989, the attorney's fee award can stand only if attorney's fees can be awarded in
the absence of a damage finding. Jack contends that courts have awarded attorney's fees for
breaches of contracts that produced no damages, citing All Valley Acceptance Co. v. Durfey, 800
S.W.2d 672, 676 (Tex. App.--Austin 1990, writ denied) (citing First City Bank--Farmers Branch
v. Guex, 677 S.W.2d 25, 30 (Tex. 1984)). These cases are distinct from this case. In both cited
cases, the plaintiff recovered damages on statutory grounds. See Tex. Bus. & Com. Code Ann.
§ 9.507 (West 1991); All Valley, 800 S.W.2d at 674; Guex, 677 S.W.2d at 27. The courts upheld
the attorney's fees awards because the statutory damage awards arose from a contract. All Valley,
800 S.W.2d at 675; Guex, 677 S.W.2d at 30. This Court's holding that Durfey need not show
actual damages to recover attorneys' fees referred to the lack of need to prove any damages in
addition to the damages assessed as statutory penalties. All Valley, 800 S.W.2d at 675. Courts
have awarded attorney's fees based on breach-of-contract findings accompanied by findings of
damages only for torts arising from the breach of contract. See Gill Sav. Ass'n v. Chair King,
Inc., 783 S.W.2d 674, 680 (Tex. App.--Houston [14th Dist.] 1989), aff'd as modified, 797 S.W.2d
31 (Tex. 1990). The critical difference here is that we have found that the only tort damages
awarded do not correspond with a valid finding of breach of contract; the breach-of-contract
finding, even if valid for the period after June 29, 1989, has no accompanying damage finding. 
A breach of contract generating no penalties or damages either independently or through
consequent torts is not a "valid claim" within the meaning of Texas Civil Practice and Remedies
Code Annotated § 38.001. The attorney's fee award in this suit therefore has no basis. We
sustain point of error one.

 We reverse the portion of the judgment incorporating any finding of breach of
contract as it pertains to the period before June 29, 1989. We render judgment that there are no
damages from breach of contract under the jury charge. We reverse the award of attorney's fees
to Jack and render judgment that he receive no such fees. We affirm the $19,658.05 damage
award for negligence and affirm the trial-court judgment in all other respects.


Before Chief Justice Carroll, Justices Jones and B. A. Smith

Affirmed in Part; Reversed and Rendered in Part

Filed: July 31, 1996

Do Not Publish
1. Indeed, had the jury found that Gen. Harpster did not sign the power of attorney,
the damage questions would have had an unrestricted timeframe.
2. The statute provides that a party can recover attorney's fees for a valid claim of
breach of contract. Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 1986). No
similar provision exists for a negligence claim.